### GIBSON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 16, 1921.)

No. 5584.

Post office ☞49—Evidence held not to sustain conviction for unlawful use of mails.

   Evidence *held* insufficient to sustain a conviction of defendant of sending nonmailable matter through the mails.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal prosecution by the United States against Charles T. Gibson. Judgment of conviction, and defendant brings error. Reversed.

Charles T. Gibson, of Thayer, Iowa, in pro. per.

E. G. Moon, U. S. Atty., of Ottumwa, Iowa (John C. DeMar, Asst. U. S. Atty., of Des Moines, Iowa, on the brief), for the United States.

Before HOOK, Circuit Judge, and COTTERAL and JOHNSON, District Judges.

PER CURIAM. The defendant was tried and convicted in the court below on an indictment which charged that on or about the 13th day of February, 1919, he, the defendant, did unlawfully deposit and cause to be deposited for mailing and delivery by and through the post office establishment of the United States, to wit, in the post office of the town of Thayer, state of Iowa, a pamphlet giving information how and by what means conception may be prevented, addressed, etc. The defendant has brought the case to this court by writ of error.

Numerous errors have been assigned, but the only one which it is necessary to consider is the refusal of the trial court at the conclusion of the testimony to direct a verdict for the defendant as requested by him. We have read the record with great care, and are of the opinion that there is no substantial evidence connecting the defendant with the offense charged in the indictment. The most that can be said of the evidence is that it arouses a suspicion that the defendant in some way aided and abetted in the mailing of the pamphlet in question. The facts of the case are these:

Post Office Inspector W. L. Kleinwachter for some reason became suspicious that a Mrs. Cora Brown was using the mails unlawfully, and arranged with the wife of an associate inspector to write a decoy letter from Council Bluffs, Iowa, to Mrs. Brown, requesting that she would send the writer a copy of the book entitled birth control, and inclosing in payment a post office money order for $1. This letter was dated February 10, 1919, and addressed to Mrs. Cora Brown, Box 288, Creston, Iowa. A few days later the pamphlet was received through the mail at Council Bluffs and immediately turned over to the inspector. The envelope inclosing the pamphlet was postmarked Thayer, Iowa, February 13, 1919. On February 17th Mrs. Cora Brown cashed the post office money order for $1 at the Creston post office. It is seen that the evidence thus far recited establishes the guilt of Mrs. Cora Brown with reasonable certainty.

To connect the defendant with the offense made out by the proof against Mrs. Brown, the government proved that in April, 1917, a young woman who is not otherwise identified rented box 288 of the Creston post office for the use of a business concern known as the Brown Book Company. About a week later the defendant called for and was given a key to box 288. He retained the key until in May, 1919. Another key to box 288 was out during this period, but to whom it was given does not appear. The rent for box 288, collected quarterly, was on several occasions paid by the defendant during the time he had a key to the box in his possession. The Brown Book Company, in whose name the box was taken, for aught the record shows,

may have had a well-known place of business in the town of Creston, or it may have been a name only, with post office box No. 288 as its sole identification.

The defendant, a lawyer by profession, had been living with his father and brother at Thayer on a farm for about 2½ years before the trial in September, 1919. On February 22d Inspector Kleinwachter, accompanied by the United States marshal and the post office clerk who had cashed the $1 money order for Mrs. Brown, went from Creston to Thayer, a distance of about 13 miles. Mrs. Brown was found at the home of the defendant. The clerk identified her as the Mrs. Cora Brown who had cashed the $1 money order on the 17th. The marshall at that time arrested both the defendant and Mrs. Brown. After the arrest the defendant told the inspector that Mrs. Brown was his wife. Until he received this information, it does not appear the inspector knew that the defendant and Mrs. Brown were married. The inspector was called as a witness and testified to a conversation he had with the defendant a day or two after the arrest. The Brown Book Company was the chief subject of this conversation.

From a casual reading of this testimony the impression is left that the defendant admitted his guilt to the witness. On a more careful reading of the testimony, however, it is seen that this impression is based upon the inferences of the witness, as is fairly illustrated in his answer to the question on cross-examination: "Mr. Gibson didn't tell you he sent any such book?" when he answered: "No, he didn't tell me; just come out and say that he sent it."

Aside from the inferences of the witness, the direct statements attributed by him to the defendant are of too doubtful import, under the circumstances of the case, to justify the conviction of the defendant. The defendant undoubtedly knew, at the time he had the conversation detailed by the witness, the nature of the evidence connecting his wife, or Mrs. Brown, with the mailing of the pamphlet, and understood its seriousness. When this so-called confession is read in the light of this knowledge, it is evident that the defendant, in what he said, was attempting to shield his wife, and not, as inferred by the witness, making or intending to make a confession of guilt.

The case made by the government amounts to this, when both the evidence and the lack of evidence are considered:

In answer to a letter from Council Bluffs, addressed to Mrs. Cora Brown, Box 288, Creston, Iowa, the pamphlet entitled birth control was received through the mail. Box 288 belonged to the Brown Book Company, a concern which may have had a well-established business at Creston. The defendant two years before had been given a key to box 288 and on several occasions had paid the box rent. Another key was out to the box. He lived at Thayer, 10 or 15 miles distant from Creston. He had never received mail through this box and had never taken mail from it. There is no evidence that he was ever in Creston, except the occasions when he paid the box rent, when he received the key to the box, and when he returned it. The connection of the defendant with post office box No. 288 is certainly insufficient to justify his conviction. The fact next to be added to those recounted above is

that the woman who committed the offense, as shown by the evidence, was the wife of the defendant, and living with him at Thayer, 12 or 15 miles distant from Creston. We do not know how long they had been married, or how long she had resided at Thayer, or how frequently she visited Creston. If the defendant is to be given the benefit of the presumption of innocence accorded to every person accused of crime, he cannot be found guilty of aiding and abetting in the commission of the offense charged in the indictment, and therefore a principal, simply because the woman was his wife. Their relationship cannot be said to do more than raise a suspicion that the defendant aided and abetted her in the commission of the offense. As already stated, we do not think the so-called confession sufficient to justify the conviction of the defendant.

Whether the facts above detailed are considered singly or together, we repeat that we are of the opinion that there is no substantial evidence connecting the defendant with the offense charged in the indictment. The most that can be said of the evidence is that it raises a suspicion that the defendant in some way aided and abetted in the mailing of the pamphlet in question. It may be possible for the prosecution, upon a retrial of this cause. to make a case against the defendant which should be submitted to a jury for its determination; but we are clearly convinced that it failed to do so at the trial now under review.

Let the judgment be reversed, and the court below directed to grant a new trial.

Judge HOOK sat in the case, concurred in the conclusion reached, but died before this opinion was prepared